

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS DELANEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 03 C 8117 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| **JO ANNE B. BARNHART,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Nicholas Delaney, seeks judicial review of the final decision of Defendant, the

Commissioner of Social Security Administration ("Commissioner"), who determined that

Delaney was not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security

Income ("SSI"). Delaney claims that the Commissioner's Administrative Law Judge ("ALJ")

erred by failing to make medical findings according to the Commissioner's regulations, by failing

to make proper credibility findings, and by failing to support his finding of Delaney's ability to

return to his past relevant work with substantial evidence. Delaney argues that any one of these

errors warrants reversal of the ALJ's decision and an award of benefits or remand of the denial of

his claim. For the following reasons, this Court reverses the Commissioner's final decision and

remands this case for further proceedings.[1]

---

[1] The parties have consented to have this Court conduct any and all proceedings,
including the entry of final judgment. *See* U.S.C. § 636(c); Local R. 73.1(b).

## I.  Procedural History

Delaney filed an application for a period of disability, DIB, and SSI under Title II and XVI of the Social Security Act on December 8, 2001, alleging disabilities beginning on January 1, 1999. (R. at 9-10.)  The Commissioner denied Delaney's claims initially on April 12, 2002, and on reconsideration on July 23, 2002. (R. at 15-20, 26-29.)  Delaney requested a hearing by an ALJ, which was held in Gary, Indiana on March 6, 2003. (R. at 30, 159.)  At the hearing, Delaney, who was represented by counsel, a medical expert ("ME") and a vocational expert ("VE") testified. (R. at 23-25, 159-95.)  On April 24, 2003, the ALJ found Delaney not disabled because he could return to his past work. (R. at 12-13.)  This became the Commissioner's final decision when the SSA's Appeals Council denied Delaney's request for review on June 27, 2003. (R. at 2-4.)

## II.  Factual Background

Delaney, born on June 14, 1976, was twenty-six years old at the time of the hearing. (R. at 59, 164.)  His educational background consists of earning a High School Equivalency Certificate ("GED"). (R. at 118-19.)  At the time of the hearing, Delaney had a two-year-old daughter and was engaged to be married. (R. at 165.)  Delaney's past relevant work experience includes; material handler in a warehouse, car detailer, hotel maintenance man, and cook. (R. at 192.)

## A.     Medical Evidence

On April 13, 1999, Delaney experienced a severe headache, nausea and vomiting. (R. at 126-27.)  A CT scan performed at the University of Chicago Hospital revealed blood in the third and fourth ventricles of the brain. (R. at 99-104.)  A physician performed a right pterioral craniotomy for clipping of an aneurysm. (Id.)  The physician noted that the surgery was uneventful and that Delaney woke up neurologically intact. (R. at 99.)  A May 25, 1999 appointment showed a healed right craniotomy and the physician observed that Delaney may have a small abnormality consistent with an old infarct that would be unusual for someone Delaney's age. (R. at 98.)

In February 2000, Delaney was hospitalized for psychiatric treatment at the Tinley Park Mental Health Center for twelve days. (R. at 132-33.)  Illinois Department of Mental Health and Developmental Disabilities records indicate that Delaney was ultimately discharged into the Linkage Case Management Service of Grand Prairie Services South Holland Clinic, in South Holland, Illinois, for a period of ninety days.[2]  (R. at 133.)  This discharge occurred in conjunction with Delaney's intention to self-refer to the South Suburban Council on Alcoholism and Substance Abuse for assessment and treatment. (Id.)

On February 25, 2002, Dr. John W. Jones, M.D., performed a consultative psychiatric evaluation of Delaney for purposes of his disability application. (R. at 134-37.)  Dr. Jones reported that Delaney was cooperative and friendly with good eye contact and spontaneous and fluent speech. (R. at 136.)  Dr. Jones diagnosed Delaney with "Major depressive disorder,

---

[2]  Delaney appears to have been an outpatient at the Grand Prairie Services clinic. (R. at 135.)

recurrent, moderate" and "Anxiety disorder, not otherwise specified." (R. at 137.) Further, he

noted that Delaney has limited contact with reality, poor insight, poor impulse control and is not

able to manage his own benefit fund. (R. at 136-37.) Dr. Jones also noted that Delaney

complained of headaches, blurred vision, numbness of legs, head injury, and a history of brain

aneurysm and scar tissue on the left side of his brain. (R. at 134-35.) In addition, Delaney told

Dr. Jones that he had a long history of symptoms of anxiety and depression, suicidal tendencies,

mood swings, easy to anger, decreased appetite, lack of motivation, frequent crying spells,

problems with concentration, memory loss, irritability, sleeping problems, and an inability to get

along with people. (R. at 134-36.) Delaney claimed that he feels hopeless, used to hurt himself

and has attempted suicide four times in the past. (R. at 134-35.) Delaney further stated,

however, that since meeting his fiancé and having a daughter he no longer has suicidal ideation,

impulses, or plans. (Id.) Finally, Dr. Jones noted that Delaney admitted using marijuana as a

teenager and crack cocaine when he was twenty-two and twenty-three years old. (R. at 135.)

Over a year later, in March 2003, Delaney's attorney asked Dr. Jones to fill out a

Headache Residual Functional Capacity Questionnaire and to render an opinion as to whether a

low stress job might increase or precipitate Delaney's headaches. Dr. Jones declined citing a

conflict of interest. (R. at 42.)

On March 29, 2002, a state's examiner reviewed Delaney's record and completed a

Psychiatric Review Technique Form ("PRTF") and a Residual Functional Capacity

Assessment - Mental ("MRFC"). (R. at 138-54.) The state's examiner completed: (1) the PRTF

listing 12.04 "Affective Disorders," determining that Delaney suffers depressive syndrome

characterized by appetite disturbance, sleep disturbance, decreased energy, and difficulty

concentrating or thinking, (R. at 141), and (2) PRTF listing 12.06 "Anxiety-Related Disorders," determining that Delaney suffers generalized persistent anxiety accompanied by motor tension and autonomic hyperactivity. (R. at 143.) The state's examiner also found Delaney's functional limitations are mild in "Restriction of Activities of Daily Living," moderate in "Difficulties in Maintaining Social Functioning," moderate in "Difficulties in Maintaining Concentration, Persistence, or Pace" and no indication of "Episodes of Decompensation." (R. at 148.) The MRFC suggested that Delaney is "moderately limited" in the ability to understand, remember or carry out detailed instructions but not significantly limited in the other categories. (R. at 152-53.) The state's examiner concluded that Delaney has the mental capacity to perform simple tasks. (R. at 154.)

In August 2002, Delaney visited Porter Memorial Hospital, in Valparaiso, Indiana, because of a "pinching pain in the left side of [his] head for several weeks on and off." (R. at 157.) Delaney underwent a CT scan but it did not indicate anything noteworthy. (R. at 157, 172.)

### B.    Medical Expert Testimony

At Delaney's March 2003 ALJ hearing, the ME, Dr. Larry Cravitz, testified that Delaney's medical records include diagnosis of major depressive disorder and anxiety disorder but that Delaney's condition does not meet or equal a listed impairment. (R. at 186.) The ME testified that Delaney has mild impairment of activities of daily living, mild impairment in social functioning, and a moderate impairment in concentration, persistence, or pace. (R. at 187.) The ME said these types of conclusions are based on a "judgment call" and could vary from doctor to

doctor. (R. at 188-89.) He found that Delaney was very appropriate at the hearing and could interact demonstrating very adequate social skills. (R. at 189.) In making this diagnosis, the ME stated that he had reviewed the record, specifically the medical evidence contained within. (R. at 187-89.) It was the ME's opinion that Delaney is mentally able to perform simple routine tasks on a sustained basis. (R. at 187.)

The ME also testified that Delaney's headaches appear to make it difficult for him to sustain concentration and focus. (Id.) He added that currently Delaney was at a minimum stress level and that adding stress to Delaney's daily routine could lead to more headaches. (R. at 194-95.) Finally, the ME noted that headaches stemming from a brain hemorrhage and scar tissue would be difficult to treat. (R. at 194.)

### C. Vocational Expert Testimony

Dr. Richard Hammersman, a VE, testified at Delaney's March 2003 ALJ hearing and found Delaney's past jobs to be unskilled work. (R. at 192.) Specifically, Delaney's work at Best Western, Long John Silver's, UPS and a car detailer were classified as light and unskilled and his previous warehouse positions were classified as heavy and unskilled. (Id.)

The ALJ then posed the following hypothetical question to the VE:

Assume an individual the claimant's age, education and work experience and assume further I were to find in the medical evidence that the claimant could do all the requirements of exertional or non-exertional work with the exception that he's limited to simple, routine task. Would he be able to return to any of his past relevant work?

(Id.) The VE answered that such a claimant would be able to return to his past work. (Id.) However, when the ALJ added additional requirements, namely that Delaney had "frequent

headaches that required him to rest for say, half hour to an hour or more, which could come on unexpectedly and could happen several times a week," the VE answered that Delaney would not be able to return to his past work. (R. at 193.)

###    D.    Delaney's Testimony

Delaney testified that he has struggled with depression and panic attacks. Delaney began seeing psychologists in sixth or seventh grade for depression and panic attacks but, because he feels they do not help, he has not seen anyone in at least two or three years. (R. at 172.) Delaney claimed that when he was younger he would find himself panicking and sweating for no reason. (Id.) Delaney used prescription medications for a time. He tried Zoloft but it made him feel "asleep and awake at the same time." (R. at 173.) Delaney switched to Paxil but its side effects made him feel even worse. (Id.) Ultimately, Delaney stopped taking such drugs altogether. (Id.) Delaney testified that, as a teenager, he had seriously hurt himself three times and attempted suicide four times. (R. at 178-79.) While Delaney used to think about hurting himself all the time, (R. at 174), because of his fiancé and two-year-old daughter, such thoughts no longer enter his mind. (Id.)

Delaney also testified briefly about serving in the U.S. Navy. (R. at 167-68.) Delaney served in the U.S. Navy for a year and a few months and was then given a general discharge without dishonor. (R. at 168.)

Delaney testified about his home life. Delaney rarely goes out and only interacts with his mother, sister, fiancé and daughter. (R. at 178.) Three times a week, Delaney goes to a nearby farmer and spends ten minutes helping him feed pigs. (R. at 184.) During the day, Delaney stays

at home and takes care of his daughter. (R. at 174.) Delaney does some basic household chores, (R. at 184-85), watches children's television programs with his daughter and takes naps. (R. at 174.) Delaney drives fifteen minutes a day to take his fiancé to her night shift job. (R. at 166.) Delaney testified that napping during the day is a necessity because he is easily overwhelmed and he suffers from headaches. (R. at 174.) Delaney also said that he would not be able to accomplish this daily routine without help from his mother and fiancé, as they take over his tasks whenever his headaches interfere. (R. at 180.) Delaney reported that these conditions were present before the aneurysm but not as exacerbated. (R. at 174.) Delaney testified that he is unable to work an eight hour day because of emotional and physical instability. (R. at 180.)

Delaney also testified to having headaches every two or three days from stress or sunlight; the headaches usually last three to four hours but occasionally are very severe and require eight hours of sleep. (R. at 179.) The very severe headaches occur a couple of times each month. (R. at 179-80.) Delaney tries to control his non-severe headaches with Tylenol, coffee, hot baths or showers and rest. (R. at 179.) Delaney testified that he often experiences pain where he had his aneurysm. (R. at 171.) He has also been told by doctors that he has a lot of scar tissue in the left side of his brain, which was likely caused by many mini-strokes following his aneurysm (which happened on the right side of his brain). (R. at 176.)

Delaney testified that he has trouble with concentration, memory, balance, dizziness, working with others and sleeping. (R. at 174, 181.) Delaney suggested that his dizziness, lack of balance, and weakness in his legs are a result of the aneurysm. (R. at 175, 177.) According to Delaney, his dizzy spells last several minutes and occur every two to four weeks. (R. at 177.) Delaney claimed that he experienced a dizzy spell two days prior to the ALJ hearing. (Id.)

- 8 -

Finally, Delaney was fired from a warehouse job because of lapses in concentration resulting in multiple accidents and crashes with a forklift. (R. at 170.)

### E. ALJ Findings

After careful consideration of the entire record, the ALJ made the following findings:

1.    A review of the claimant's earnings record reveals the claimant's income upon which Social Security taxes were paid earned sufficient quarters of coverage to remain insured on the alleged disability onset date, and continues to meet those requirements at least through June 30, 2003.

2.    The claimant has not engaged in disqualifying substantial gainful activity during the period relevant to this decision.

3.    The medical evidence establishes that the claimant has affective mood disorder and anxiety related disorders. These medically determinable impairments cause significant limitations in the claimant's work related functioning and are, therefore, severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

4.    The undersigned finds the claimant's allegations regarding his limitations are partially credible for the reasons set forth in the body of the decision.

5.    The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

6.    The claimant has no exertional limitations and the mental residual functional capacity for simple, routine tasks on a sustained basis.

7.    The claimant's past relevant work did not require the performance of work involving more than simple, routine tasks (20 CFR §§ 404.1565 and 416.965).

8.    The claimant's medically determinable impairments do not prevent the claimant from performing any of his past relevant work.

9.    The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(e) and 416.920(e)).

(R. at 12.)  The ALJ then concluded that, "based on the applications filed on December 8, 2001, the claimant is not entitled to a period of disability, Disability Insurance Benefits, and not eligible for Supplemental Security Income payments under Sections 216(i), 223, 1602, and 1614(a)(3)(A) respectively, of the Social Security Act."  (R. at 13.)


### III.  Standard of Review

In order to receive DIB, Social Security regulations require that Delaney suffer from a disability within the meaning of the Social Security Act.  Disability is defined as the inability to do any substantial gainful activity[3] by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  20 C.F.R. § 404.1505(a).  To meet this

---

[3] Substantial gainful activity means work that: (a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit.  20 C.F.R. § 404.1510.

definition, Delaney must have a severe impairment[4] that makes him unable to perform past relevant work or any other substantial gainful work that exists in the national economy. Id. If Delaney cannot do past relevant work, then his residual functional capacity ("RFC") assessment and age, education and work experience are used to determine whether he can do other work. Id. The determination of disability involves both medical and vocational issues and requires a five-step process. The five steps are:

> Step 1: Is the claimant presently employed? If yes, the claim is rejected; if no, the inquiry proceeds to step two.
>
> Step 2: Is the claimant's impairment "severe," and expected to last at least twelve months? If no, the claim is rejected; if yes, the inquiry proceeds to step three.
>
> Step 3: Does the impairment meet or equal the severity of an impairment listed in the appendix of 20 C.F.R. § 404, Subpt. P, App. 1? If yes, the claimant is automatically disabled; if no, the inquiry proceeds to step four.
>
> Step 4: Is the claimant able to perform her past relevant work experience? If yes, the claim is denied; if no, the inquiry proceeds to step five where the burden shifts to the Commissioner.
>
> Step 5: Is the claimant able to perform any other work within her residual functional capacity in the national economy? If yes, the claim is denied; if no, the claimant is disabled.

---

[4] A Disabling Impairment is defined as an impairment (or combination of impairments) which, of itself, is "so severe that it meets or equals a set of criteria in the Listing of Impairments in appendix 1 of this subpart or which, when considered with [claimant's] age, education, and work experience, would result in a finding that [claimant is] disabled under § 404.1594." 20 C.F.R. § 404.1511(a).

20 C.F.R. § 404.1520(a)(4)(i)-(v). *See also Herron v. Shalala*, 19 F.3d 329, 333 n.8 (7th Cir. 1994). At the fourth and fifth steps of the five-step inquiry, the ALJ must consider an assessment of the claimant's RFC. The RFC is an assessment based upon all of the relevant evidence of what the claimant can still do despite his physical limitations. 20 C.F.R. § 404.1545(a). In other words, the RFC is the most the claimant can do, not the least. Id. The MRFC is an assessment of all of the relevant evidence of what the claimant can do despite his mental limitations. 20 C.F.R. § 404.1545(c). The RFC assessments help to evaluate the types of work available to an individual with particular limitations. Id. The final responsibility for deciding the claimant's RFC and MRFC rests with the ALJ. 20 C.F.R. § 404.1527(f)(2).

The ALJ used this five-step process in making his findings and determined at step four that Delaney's medically determined impairments do not prevent him from performing any of his past relevant work, (R. at 12), i.e., Delaney was not under a "disability" as defined in the Social Security Act at any time through the date of the decision. (Id.) Delaney challenges this finding.

Section 205(g) of the Social Security Act grants federal courts the authority to review final decisions of the Commissioner with the power to affirm, modify, or reverse, with or without remand to the Commissioner for a rehearing. 42 U.S.C. § 405(g). However, this Court's scope of review is limited; the Commissioner's decision must be affirmed so long as it is supported by substantial evidence. *See Herron*, 19 F.3d at 333. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . ." *Dray v. R.R. Ret. Bd.*, 10 F.3d 1306, 1310 (7th Cir. 1993) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ's finding must be supported by more than a scintilla of evidence, but may be supported by less than the full weight of the evidence. *Young v. Sec'y of Health & Human*

- 12 -

*Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986).

This Court must consider all evidence in the record but it may not decide the facts anew, reweigh

the evidence, or substitute its judgment for that of the ALJ, as the ALJ must resolve all factual

issues and evidentiary conflicts. *Jones v. Shalala*, 10 F.3d 522, 523 (7th Cir. 1993); *Delgado*,

782 F.2d at 82.

## IV. Discussion

Delaney disputes the ALJ's findings. First, Delaney argues that the ALJ failed to assess

his mental impairments in accordance with the Commissioner's rulings. Second, Delaney

contends that the ALJ failed to substantiate his credibility finding with evidence from the record,

as required by Social Security Ruling ("SSR") 96-7p. Finally, Delaney argues that the ALJ's

finding that Delaney could return and perform his past work is not supported by the evidence.

### A. Substantial Evidence Supports the ALJ's Mental Impairments Finding.

Delaney contends that the ALJ failed to use the technique for evaluation of mental

impairments required by 20 C.F.R. § 404.1520a. Specifically, Delaney argues that the ALJ failed

to discuss the completed PRTF questionnaire, and failed to rate Delaney's degree of functional

limitations. Under 20 C.F.R. § 404.1520a, the Commissioner must rate the degree of the

claimant's functional limitation based on the extent to which the mental impairment(s) interferes

with the ability to function independently, appropriately, effectively, and on a sustained basis.

The Commissioner rates degree of functional limits in four broad areas: (1) activities of daily

living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) use the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If the impairment is severe, but does not meet or equal a listed impairment, the decision-maker will then assess the claimant's MRFC, which lists limitations related to work activity. 20 C.F.R. § 404.1520a(d)(2)-(3). Delaney argues that the ALJ did not follow 20 C.F.R. § 404.1520a and did not make specific findings as to Delaney's significant history of impairment and current problems.

In his decision, the ALJ recognized Delaney's depressive and anxiety disorders as severe mental impairments but also found that the disorders do not meet or equal the listing. (R. at 11.) Subsequently, the ALJ rated Delaney's functional limits in the four broad functional areas discussed above when he stated that, "The medical evidence of record does not support a finding that the claimant experiences any marked functional limitations in [his] activities of daily living; social functioning; concentration, pace, or persistence. Nor is there any evidence to show frequent episodes of decompensation or deterioration in work like setting." (Id.) Although the ALJ did not state each rating individually, his statement of the PRTF results, noting no marked functional limitations, indicates that there may be mild or moderate limitations present in some areas but no marked limitations. Thus, the ALJ sufficiently addressed the four areas of the PRTF.

The ALJ did not specifically mention Delaney's MRFC. The MRFC was completed by the state's examiner and indicated that Delaney was "not significantly limited" in any area of

- 14 -

mental functioning except in the ability to understand, remember and carry out "detailed" instructions. (R. at 152.) At the end of the MRFC, the state's examiner concluded that Delaney has the mental capacity to perform simple tasks. (R. at 154.) The ME, after reviewing the record, which included the MRFC, also concluded Delaney has the mental capacity to perform simple tasks. (R. at 186-87.) Thus, both of the medical experts incorporated the MRFC into their medical findings. In his decision, the ALJ cited the MRFC exhibit, gave significant weight to the state's examiner's and ME's reports, and relied on the state's examiner and ME to find Delaney not disabled. (R. at 11.) This was appropriate as the ALJ is permitted and encouraged to rely on the state's examiner and the ME. *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990); 20 C.F.R. § 404.1527(f)(2)(i). Because the ALJ's finding, that Delaney has the mental capacity to perform simple, routine tasks, is supported by the medical professionals and incorporates the PRTF and MRFC as completed and understood by the state's examiner and ME, the ALJ satisfied the requirements of 20 C.F.R. § 404.1520a and need not further elaborate on his reasoning.

B.    The ALJ's Credibility Finding is Not Supported by
        Substantial Evidence.

The ALJ found Delaney's allegations regarding his limitations are partially credible for "the reasons set forth in the body of the decision." (R. at 12.) Delaney contends that the ALJ did not sufficiently articulate reasons for his credibility determinations, specifically with regard to Delaney's description of his headache pains or with regard to his mental limitations. The Commissioner responds that; (1) no treating doctor or psychologist opined that Delaney actually

experienced headaches and (2) the ALJ identified and relied upon relevant and sufficient evidence when making his mental limitations credibility finding.

### 1. Headaches credibility finding

When assessing credibility, resolution of competing arguments based on the record is for the ALJ, not this Court. *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). On appeal, the ALJ's credibility findings are entitled to substantial deference, *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995), but the ALJ's determination must be supported by the record evidence and be sufficiently specific to make clear to the claimant and to any subsequent reviewer the weight given to the claimant's statements and the reasons for that weight. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003). This Court recognizes that evaluating the credibility of pain, fatigue and other subjective complaints are fraught with uncertainty. Nonetheless, the ALJ must take care to articulate which information he relies upon when making his determinations and findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (ALJ must evaluate which allegations are credible and which are not credible); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (ALJ must sufficiently articulate his assessment of the evidence to allow the court to trace the path of the reasoning); *Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984) (where ALJ fails to mention rejected evidence, the reviewing court cannot discern if significant evidence was credited or simply ignored). The ALJ may not reject subjective symptoms as not credible in a conclusory manner without providing reasoning for such a rejection. *Szulyk v. Heckler*, 575 F. Supp. 1266, 1269 (N.D. Ill. 1984). Furthermore, the ALJ must consider specific factors when assessing the credibility of an individual's statement. For example, under SSR 96-7p, the ALJ

must consider: daily activities; the type dosage, effectiveness, and side effects of medication taken by the claimant; treatment other than medication used to alleviate pain; and the reasons the claimant may not seek treatment for the pain.[5] SSR 96-7p.

Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). The medical evidence indicates that Delaney has a brain aneurysm, namely blood in the third and fourth ventricles of his brain. (R. at 98-104.) A physician performed a right pterioral craniotomy for clipping of the aneurysm. (Id.) Indeed, the ALJ himself notes that this history of brain surgery may cause occasional headaches. (R. at 11.) Additionally, there may be scar tissue on the left side of Delaney's brain caused by mini-strokes. (R. at 135, 176.) Considering Delaney's brain trauma, it is understood, as the ME confirmed, that headaches will likely follow. (R. at 188, 194.) Thus, there is medical evidence of an underlying impairment and the Court finds that the ALJ did not sufficiently specify and discuss Delaney's headaches to properly support his finding that Delaney was not credible and that his headaches do not preclude him from returning to his past relevant work.

---

[5] SSR 96-7p, in its entirety, includes: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for fifteen to twenty minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

In his decision, the ALJ noted that Delaney alleges chronic headaches but lacks a RFC rating potential limitations from those alleged headaches. (R. at 11.) The ALJ then relied on four factors raised in testimony to make his credibility determination, namely that Delaney: (1) takes care of his daughter; (2) only takes Tylenol and has not been prescribed any medication for headaches; (3) drives his car every day; and (4) did not appear in extreme stress at the hearing. (Id.) Based on these four factors the ALJ concluded that, although Delaney "may have occasional headaches caused by his history of brain surgery, there is little evidence that these headaches would preclude all work." (Id.) This assessment is inadequate as the ALJ fails to balance the four factors against other medical and testimonial evidence, does not adequately illustrate his reasoning in choosing which factors to find credible and which factors to find not credible, and does not make clear why the factors considered necessarily indicate that Delaney does not suffer headaches that preclude the ability to return to past work.

First, the ALJ considers that Delaney takes care of his daughter during the day. (Id.) Delaney testified that he stays at home and takes care of his daughter, (R. at 174), performs some basic household chores, (R. at 184-85), watches children's television programs with his daughter, and takes naps. (R. at 174.) The ALJ highlights Delaney's care-taking as a factor but ignores the fact that these are not strenuous nor complicated activities and that Delaney, nonetheless, needs support to accomplish them. Delaney testified that he relies on the support provided by his fiancé and mother, who are both present throughout the day because, due to his headaches, he cannot manage on his own. (R. at 180, 185.) Furthermore, even if Delaney can perform these care-taking responsibilities, he may still be disabled because there is a difference between the ability to engage in sporadic physical activities and the ability to work eight hours a day five

- 18 -

consecutive days a week. *Carradine*, 360 F.3d at 755; *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). This may be even more true when that activity is watching one's own child, as parents disregard their own comfort to care for their children every day and caring for one's own children is not a chief indication of a lack of pain. *See e.g., Zurawski*, 245 F.3d at 887 (preparing children for school and performing light household chores does not necessarily indicate lack of pain). In addition, Delaney testified that he and his daughter watch cartoons until mid-day and then they both take a nap. (R. at 174.) These activities are not indicative of the ability to work a regular forty hour work week. *See Zurawski*, 245 F.3d at 887. In short, Delaney's testimony about care-taking may actually contradict the ALJ's conclusion. If the ALJ believes that Delaney's ability to watch his daughter indicates that his headaches are not severe, then the ALJ must note the reasons for such an inference. *See id.* Therefore, it is incumbent upon the ALJ to explain why he chooses and how he weighs which parts of the testimony in deciding Delaney's level of credibility.

Second, the ALJ finds it significant that Delaney takes Tylenol and not prescription medication for his pain. The ALJ must, however, consider reasons for a claimant's lack of treatment. *See Herron*, 19 F.3d at 336 n.11; SSR 96-7p. Delaney reported on the SSA's "Claimant's Medications" that he was taking Tylenol because he had no medical insurance or money to see a physician. (R. at 156.) Furthermore, the ALJ did not inquire as to how often or what dosage of Tylenol Delaney takes, as SSR 96-7p requires. SSR 96-7p. Such information is integral to an evaluation of Delaney's pain level. Additionally, the record indicates that Delaney complained of a "pinching pain in the left side of [his] head for several weeks on and off," and therefore visited the emergency room at Porter Memorial Hospital in Valparaiso, Indiana in

- 19 -

August 2002. (R. at 157.) Delaney testified that he had to wait at the emergency room with his fiancé and daughter for seven hours before the hospital gave him a CT scan. (R. at 172.) Delaney's willingness to undergo this procedure and its inconveniences suggests he suffered at least some discomfort from his headaches in August 2002. *See Carradine*, 360 F.3d at 756. These reports support Delaney's credibility regarding complaints of pain, yet the ALJ's opinion does not explain why such factors are dismissed as irrelevant or not credible.

Finally, the ALJ's third and fourth credibility factors—that Delaney drives his car everyday and did not appear in extreme distress at the hearing—are insufficient. Delaney testified that he drove every day for a half hour on the three days before the hearing. (R. at 166.) Delaney's three days of limited driving do not per se disqualify him from being disabled. *See Carradine*, 360 F.3d at 755-56. As for Delaney's demeanor at the trial, an ALJ should not discredit a claimant's testimony simply because he failed to "sit and squirm." *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (Seventh Circuit disapproves of ALJs using a sit and squirm test). Delaney testified to getting headaches every two to three days, (R. at 179), so it is quite possible that he was not in pain during the hearing.

Delaney testified in detail to his headaches and the ALJ fails to adequately address that testimony in his decision. The ALJ does not set forth the reasons for choosing which evidence he emphasizes and does not properly develop the record against Delaney's credibility. It follows that the ALJ fails to build an accurate and logical bridge between the available evidence and his finding regarding Delaney's credibility. *See Shramek v. Apfel*, 226 F.3d 809, 811-12 (7th Cir. 2000). Accordingly, the Court remands the case to the SSA for reevaluation of Delaney's

credibility regarding headaches and pain. On remand, there may be a need to acquire better objective evidence as to Delaney's headaches.[6]

### 2. Mental impairments credibility finding

The ALJ's credibility determination regarding Delaney's mental conditions is supported by evidence in the record. The ALJ discusses Delaney's disorders and the various medical opinions in the record, and points to which evidence receives the most weight. (R. at 11.) Although the ALJ does not discuss Delaney's history of mental problems in depth, the ALJ both recognizes Delaney's primary mental impairments of affective mood disorder and anxiety related disorders and relies on medical opinions (namely the state's examiner and the ME) that thoroughly evaluated Delaney's mental history. (Id.) The ALJ's conclusion that the medical evidence and medical opinions were more consistent with the record than some of Delaney's testimony, is sufficient support for his credibility finding. *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) (hearing officers are given special deference in credibility determinations and the record need only show adequate support for the ALJ's finding).

### C. Substantial Evidence Supported the ALJ's Return To Past Relevant Work Finding.

Delaney's final argument is that the ALJ relied on flawed VE testimony to determine that Delaney can return to his past relevant work. At the March 2003 hearing, the ALJ asked the VE

---

[6] Delaney's request for a headache RFC from Dr. Jones was denied because of a technicality, namely an unexplained "conflict of interest." (R. at 42.) It would be in the nature of the "inquisitorial" (as opposed to "adversarial") system of the SSA proceedings to obtain such an assessment.

to assume an individual Delaney's age and with Delaney's education and work experience and then "assume further I were to find in the medical evidence that the claimant could do all the requirements of exertional or non-exertional work with the exception that he's limited to simple, routine task. Would he be able to return to any of his past relevant work?" (R. at 192.) The VE answered in the affirmative. (Id.) Delaney first cites to *Kasarsky v. Barnhart*, 335 F.3d 539, 543-44 (7th Cir. 2003), and argues that, if the ALJ relied on the VE, the ALJ's hypothetical must include all of the claimant's relevant limitations in the record. Delaney faults the ALJ for not including either the PRTF or MRFC's specific limitations in the hypothetical. Second, Delaney contends that the ALJ erred by making a vocational conclusion before eliciting an opinion from the VE. Specifically, Delaney argues that the ALJ's hypothetical should not have included a vocational finding of simple and routine tasks but rather the medical findings listed in Delaney's PRTF and MRFC.

Delaney's PRTF includes moderate limitations in the category of social functioning and in concentration, persistence or pace. (R. at 148.) Under certain circumstances, it may be necessary for an ALJ to include these limitations in a hypothetical to a VE. *Myles v. Chater*, No. 95 C 3929, 1997 WL 189290, at *2-3 (N.D. Ill. April 14, 1997). In this case, however, the ALJ did not err by excluding Delaney's PRTF and MRFC limitations from the hypothetical nor did he make a vocational conclusion or elicit an uninformed answer from the VE. Two medical experts concluded, based on Delaney's PRTF and MRFC, that Delaney was limited to simple, routine tasks. (R. at 154, 186-87.) Therefore, the determination of a simple, routine tasks limitation encompasses the PRTF and MRFC limitations and is not the ALJ's independent vocational conclusion. The ALJ relied on this medical limitation determination in his medical

- 22 -

findings, and subsequently incorporated this medical finding in the hypothetical posed to the VE. (R. at 11, 192.) Since the medical finding concluded from a medical perspective that Delaney was limited to simple, routine tasks, the VE was supplied with all the relevant information and provided a fully informed and reliable answer.

Indeed, *Johansen v. Barnhart* is a similar case and supports this conclusion. 314 F.3d 283, 284 (7th Cir. 2002). In *Johansen*, the ALJ presented the VE with a hypothetical individual who (in addition to physical limitations) had the mental ability to perform low-stress, repetitive, unskilled work. *Id.* at 286. The Seventh Circuit noted that the limitation in the hypothetical was based on a physician's conclusive opinion about the claimant. *Id.* at 288-89. The ALJ, in *Johansen*, explained that he relied on this physician's opinion in determining the claimant's medical limitations and that such a determination was supported by the evidence. *Id.* Since the ALJ's finding of the individual's medical limitations was properly based on the medical evidence in front of him, the Seventh Circuit found that the ALJ's hypothetical was sufficient to elicit accurate testimony from the VE, even if even if more specific limitations were available and could have been included in the hypothetical. *Id.*

Delaney's reliance on *Kasarsky* is flawed, as *Kasarsky* is distinguishable from *Johansen* in at least one important respect. In *Kasarsky*, the ALJ concluded in his medical findings that the claimant was frequently limited in concentration, persistence or pace, but he failed to include these limitations in his hypothetical to the VE. 335 F.3d at 543. Because the PRTF limitations were not otherwise incorporated in the hypothetical posed to the VE, the hypothetical was flawed and prevented the VE from giving reliable testimony. *Id.* Conversely, in this case, as in *Johansen*, the ALJ's medical finding did not include a specific limitation that was subsequently

- 23 -

omitted from the hypothetical, rather the medical finding was that Delaney is limited to performing simple, routine tasks. The ALJ incorporated the PRTF and MRFC functional limitations into the hypothetical because his hypothetical consisted of the medical finding limitation shaped by the PRTF and MRFC functional limitations. Thus, the hypothetical included all relevant medical limitations so the VE's response was a reliable response. On remand this may change as the ALJ's hypothetical may need to include limitations regarding Delaney's headaches and pain before the VE can give reliable testimony. Thus, whether the ALJ's finding that Delaney can return to his past work is still accurate in light of the credibility error this Court found above will be determined on remand.

## IV.  **Conclusion**

For the above reasons, the Court reverses the Commissioner's final decision and remands this case to the ALJ for further proceedings consistent with this opinion. The Commissioner's motion for summary judgment is therefore denied, and Delaney's motion for summary judgment is granted to the extent that this Court reverses and remands the Commissioner's decision, but denied to the extent that Delaney seeks reversal and award of benefits.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
Dated:  May 13, 2005.                              United States Magistrate Judge

Copies have been mailed to:

FREDERICK J. DALEY, Esq.
Daley, DeBofsky & Bryant
One North LaSalle Street
Suite 3800
Chicago, IL 60602

Attorney for Plaintiff

MS. MALINDA HAMANN
Special Assistant United States Attorney
200 West Adams Street
30th Floor
Chicago, IL 60606

Attorney for Defendant